**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIANN BATCHELDER,**

                                        **Plaintiff,**

        **vs.**                                                 **10-CV-00267**
                                                                **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

OFFICE OF STEPHEN J. MASTAITIS          Stephen J. Mastaitis, Esq.
1412 State Route 9P
Saratoga Springs, New York 12866
*Attorney for Plaintiff*

Social Security Administration          Michelle L. Christ, Esq.
Office of Regional Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

        Plaintiff Mariann Batchelder brings the above-captioned action pursuant to 42 U.S.C. §

405(g) seeking a review of the Commissioner of Social Security's decision to deny her

application for disability insurance benefits ("DIB") and supplemental social security income

("SSI").

## II.    BACKGROUND

On March 27, 2007, plaintiff filed applications for DIB and SSI.  (T. 92, 99)[1].  Plaintiff was 35 years old at the time of the applications with past work experience as a home healthcare aide.  (T. 24).  Plaintiff claims that she was disabled due to major depressive disorder, low back disorder and possible bilateral trochanteric bursitis. (T. 9).

On June 13, 2007, plaintiff's applications were denied and plaintiff requested a hearing by an ALJ which was held on June 3, 2009. (T. 19, 62).  On July 10, 2009, the ALJ issued a decision denying plaintiff's claim for benefits.  (T. 7-14).  The Appeals Council denied plaintiff's request for review on January 11, 2010, making the ALJ's decision the final determination of the Commissioner. (T. 1-3).  This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.  The ALJ erroneously noted the filing date as February 22, 2007. (T. 7).

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set

aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful

activity since December 8, 2006. (T. 9).  At step two, the ALJ concluded that plaintiff suffered

from major depressive disorder, lower back disorder and possible bilateral trochanteric bursitis

which qualified as "severe impairments" within the meaning of the Social Security Regulations

(the "Regulations").  (T. 9).  At the third step of the analysis, the ALJ determined that plaintiff did

not have an impairment or combination of impairments that meet or equal the severity of any

impairment listed in Appendix 1 of the Regulations.  (T. 10).  The ALJ found that plaintiff had

the residual functional capacity ("RFC") to, "perform the full range of sedentary work".  (T. 10).

At step four, the ALJ concluded that plaintiff did not have the RFC to perform any of her past

relevant work.  (T. 13).  At step five, relying on the medical-vocational guidelines ("the grids")

set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had

the RFC to perform jobs existing in significant numbers in the national economy.  (T. 13).

Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social

Security Act.  (T. 14).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred in failing to find that plaintiff's depression met the criteria for Listing § 12.04A; (2) the ALJ failed to consider plaintiff's combination of impairments; (3) the ALJ failed to properly apply the treating physician rule; (4) the ALJ ignored the applicable Regulations and improperly assessed plaintiff's credibility; (5) the ALJ failed to specify the functions plaintiff is capable of performing; and (6) the ALJ should have elicited testimony from a vocational expert. (Dkt. No. 10).

## I.    Listing § 12.04

Plaintiff claims that her impairments meet or equal the requirements of Listing § 12.04.[2]

---

[2] Listing 12.04 provides:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

4

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416 .925(a).  If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. *Campbell v. Astrue*, 2009 WL 2152314, at *4 (N.D.N.Y. 2009) (citing 20 C .F.R. § 416.920(a)(4)(iii)).

"When evaluating the severity of mental impairments, the regulations require the ALJ to apply a 'special technique' at the second and third steps of the review, in addition to the customary sequential analysis."  *Lint v. Astrue*, 2009 WL 2045679, at *4 (N.D.N.Y. 2009) (citing *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a)).  First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005).  If a medically determinable impairment exists, the ALJ must "rate the degree of

---

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 12.04.

functional limitation resulting from the impairment [ ]." 20 C.F.R. §§ 404.1520a(b)(2),

416.920a(b)(2).  This process requires the ALJ to examine all relevant clinical and laboratory

findings, as well as the effects of the symptoms on the claimant, the impact of medication and its

side effects, and other evidence relevant to the impairment and its treatment. 20 C.F.R. §§

404.1520a(c)(1), 416.920a(c)(1).  The ALJ must rate the degree of the claimant's functional

limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living;

social functioning; concentration, persistence, or pace; and episodes of decompensation. 20

C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ rates the first three areas on a five-point

scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point

scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4),

416.920a(c)(4).  If the first three areas are rated as "none" or "mild," and the fourth as "none," the

ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise

indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work

activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

A diagnosis of depression, without more, does not suggest that a plaintiff's depression

severely impairs her performance of any major life activity.  *See Torres v. Astrue*, 550 F.Supp.2d

404, 411 (W.D.N.Y. 2008).  The medical evidence must show that depression precludes a

plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139,

at *4 (W.D.N.Y. 2009).  Moreover, evidence that medication provides relief from the severity of a

mental condition can provide substantial evidence to support a finding that a plaintiff is not

disabled.  *Pennay v. Astrue*, 2008 WL 4069114, at *5 (N.D.N.Y. 2008).

**A.     Medical Record**

In April 2006, plaintiff was examined by Susan Dorsey, M.D., one of her treating physicians.  Dr. Dorsey noted that plaintiff exhibited "no depression or anxiety" and displayed a normal affect.  (T. 237).  According to the record, plaintiff made no complaints and received no treatment for any mental health impairment, including depression, between April 2006 and March 2008.  On March 27, 2008, plaintiff was treated at ECS Psychological Services, P.C. and examined by Erin Christopher-Sisk, Ph.D.  (T. 313).  Dr. Christopher-Sisk diagnosed plaintiff with Major Depressive Disorder and counseled plaintiff on how to deal with her underlying stressors advising her to, "go to a safe place to vent feelings". (T. 315).  Plaintiff had a total of six visits with Dr. Christopher-Sisk.  On May 2, 2008, plaintiff treated with Kristen Martin, M.D. for complaints of depressive symptoms and feelings of hopelessness.  Dr. Martin diagnosed plaintiff with depression and prescribed Cymbalta. (T. 298).  Plaintiff had three subsequent visits with Dr. Martin for complaints/treatment unrelated to depression.  Dr. Martin's treatment notes from those visits (June 3, 2008, January 2, 2009 and February 3, 2009), do not address or provide a course of treatment for depression. (T. 300-310).  The record does not contain any opinion or evaluation from any of plaintiff's medical providers regarding whether plaintiff's depression impacts her ability to perform work related activities.

During the administrative hearing, plaintiff testified that she began treating for depression in Spring or Summer 2008 and treated for three to six months.  (T. 37-38).  Plaintiff intends to seek further treatment for depression when she is financially able. (T. 27, 29, 41).  Plaintiff claims that she has mood swings when she does not take Cymbalta and that her depression causes forgetfulness and drowsiness. (T. 32).  However, plaintiff's depression does not have any impact on her interpersonal relations.  (T. 32)

**B.      Analysis**

7

In the decision, the ALJ discussed plaintiff's mental impairments:

> In making an assessment regarding the severity of the claimant's mental condition, the Administrative Law Judge has given consideration to the psychiatric review technique and finds that the claimant has no limitations in activities of daily living, no limitations maintaining social functioning, and only mild limitations in concentration, persistence, and pace. The record does not provide any evidence that the claimant has had any episodes of deterioration or decompensation of extended duration. At hearing, the claimant testified that she has no problems with interpersonal relations. Although only on a part-time basis, she works with the public providing home-health care which supports her testimony. Her minimal symptoms are controlled through prescribed psychotropic medications. She has not required any lasting mental health treatment. However, because she is diagnosed as having a major depressive disorder, with reports of mood swings when not taking her medications, a finding is made in a light most favorable to the claimant. Despite her mental impairments being considered severe, the claimant remains fully capable of meeting the basic mental demands of work. (T. 9-10).

The ALJ cited to medical records from Erin Christopher-Sisk, Ph.D. and found, "[i]n this particular case, the pertinent Listings require specific findings which are not present". (T. 10).

Based upon the record, the Court finds that substantial evidence supports the ALJ's determination that plaintiff's depression does not meet the requirements of the pertinent listing. Plaintiff claims she suffers from conditions listed in 12.04, Paragraph A, including loss of interest, feelings of worthlessness, difficulty concentrating and a change in weight. However, other than plaintiff's self-serving statements, there is no evidence supporting plaintiff's allegations. *See Rockwood v. Astrue*, 614 F.Supp.2d 252, 275 (N.D.N.Y. 2009) (the plaintiff claimed that she suffered from the symptoms required in Part A but none of the required symptoms were of "medically documented persistence"). Even assuming plaintiff could satisfy the requirements of Part A, the record supports the ALJ's assessment of the Part B criteria. Plaintiff asserts, without citing to any portion of the record in support, that she suffers from

restrictions of daily activity and social functioning, and marked limitations in concentration, persistence or pace.  The Court has conducted a thorough review and finds that no support in the medical records for these conclusory allegations.  Plaintiff does not allege that she meets the requirements of Part C.

The ALJ did not specifically cite to Listing 12.04, however, it was clearly considered and given the lack of evidence supporting plaintiff's claims, the ALJ's failure to specifically cite the appropriate listing was harmless error.  Accordingly, the Court finds that substantial evidence supports the ALJ's determination that plaintiff's depression did not meet or equal a listed impairment.

**II.      Combination of Impairments**

Where the claimant has more than one impairment, the ALJ must account for the combined effect of all impairments on a claimant's ability to work, regardless of whether each impairment is severe.  *Thompson v. Astrue*, 416 F. App'x 96, 97 (2d Cir. 2011).  In this regard, plaintiff sets forth conclusory assertions, without citations to the record, that the ALJ failed to adequately discuss the combined effects of plaintiff's multiple impairments. (Dkt. No. 10, p. 12). The ALJ analyzed plaintiff's lower back disorder, bilateral trochanteric bursitis and major depressive disorder and found all three to be severe impairments.  The ALJ also determined that plaintiff did not have a "combination of impairments" that met the specified criteria of any listing. The decision suggests that the ALJ considered the cumulative effect of plaintiff's impairments. *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (the ALJ opinion recognized that the plaintiff "suffered from severe musculoskeletal and endocrine impairments" during the relevant periods, but found that "said impairments failed to meet or equal the level of severity of any disabling

condition contained in [the] Appendix.").   Accordingly, the Court finds no error in the ALJ's

determination in this regard.

**III.    RFC**

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion of
> the individual's abilities on that basis. A 'regular and continuing basis'
> means 8 hours a day, for 5 days a week, or an equivalent work
> schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)).   In making the RFC determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis.   20

C.F.R. § 404.1545(a).

In this case, the ALJ found that plaintiff has the residual functional capacity to perform the

full range of sedentary work.   (T. 10).   Sedentary work is defined as:

> involves lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in carrying
> out job duties. Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Plaintiff challenges this determination arguing that the ALJ ignored misapplied the

"treating physician rule" and improperly discounted plaintiff's subjective complaint.   Plaintiff

also claims that the ALJ erred when he failed to specify the functions plaintiff is capable of performing.  (Dkt. No. 10, p. 14).

**A.       Treating Physician Rule**

Plaintiff argues that the ALJ should have assigned "more weight" to Dr. Susan Dorsey's opinions. (Dkt. No. 10, p. 8).  Defendant claims that the ALJ properly evaluated Dr. Dorsey's opinions and provided adequate reasons for failing to assign controlling weight. (Dkt. No. 13, p. 7).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78–79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).  An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so.  *Saxon v. Astrue*, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir.2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999)).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec*., 236 F. App'x 641, 643–44 (2d Cir.2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

### 1.   Medical Treatment for Lower Back Disorder and Possible Bilateral Trochanteric Bursitis

On January 11, 2006, plaintiff was treated by Dr. Susan Dorsey for complaints of lower back pain after a motor vehicle accident. (T. 231). Upon examination, Dr. Dorsey noted positive straight leg raising in the left leg at 45 degrees, normal strength, pinprick and touch. (T. 231). Dr. Dorsey reviewed a January 9, 2006 MRI of plaintiff's lumbar spine and diagnosed plaintiff with a bulging disc at L5-S1 and "low back syndrome". Dr. Dorsey opined that plaintiff, "would be expected not to be able to lift more than 20 pounds at a time. She needs to be able to get up from sitting every 1 hour and not do heavy pushing, pulling or overhead lifting" and further, that plaintiff, "needs retraining to do a desk job". (T. 231-32).

On April 13, 2006, plaintiff returned to Dr. Dorsey and stated that she was doing "much better". (T. 237). Plaintiff was working five hours a day and caring for her mother. (T. 237). Plaintiff experienced some pain in her legs but had "done very well with chiropractic care".

Plaintiff exhibited "no joint pain/swelling or musculoskeletal deformities" and a full range of motion in her extremities without tenderness.  Dr. Dorsey diagnosed plaintiff with "low back syndrome-doing very well".  (T. 238).  On the same day, April 13, 2006, Dr. Dorsey completed a Physical Examination Report for the Visiting Nurse Association of Albany Home Care Corporation. (T. 233).  Dr. Dorsey noted that plaintiff suffered from no musculoskeletal limitations and further, that plaintiff did not have any health impairment which would interfere with her ability to perform her job duties. (T. 235-36).  Dr. Dorsey concluded that plaintiff, "is able to perform the job functions of the position noted herein". (T. 236).

On November 8, 2006, plaintiff returned to Dr. Dorsey complaining of "constant back pain". (T. 241).  At that time, plaintiff was working as a home health aide and part-time at Target. (T. 241).   Upon examination, Dr. Dorsey noted "DTRs[3] symmetric, normal gait, tenderness in lumbosacral region bilaterally" and negative pain on straight leg raising. (T. 241).  Dr. Dorsey diagnosed plaintiff with a low back strain and prescribed Skelaxin.[4]

On December 18, 2006, plaintiff returned complaining of left sided leg pain, back pain and numbness. (T. 242).  Upon examination, plaintiff exhibited a normal gait, symmetric DTRs, positive straight leg raising on the right at 30 degrees with spasms in the lumbar region. (T. 242).  Dr. Dorsey diagnosed plaintiff with a low back strain with sciatica and prescribed a muscle relaxant.  Plaintiff was advised to continue treating with her chiropractor.

---

[3] DTR is an abbreviation for deep tendon reflex.  http://www.medilexicon.com (last visited December 13, 2011).

[4] Skelaxin is a centrally acting skeletal muscle relaxant used in the treatment of painful musculoskeletal conditions.  *Dorland's* at 1163, 1748.

On March 7, 2007, plaintiff sought treatment at TotalCare Medical, P.C. for pain in her low back radiating to her lower extremity. (T. 196) Dr. Ehab M. Kodsi[5] examined plaintiff and found severe tenderness/spasm of the bilateral gluteus medius muscle and lumborum muscle. (T. 198).  Dr. Kodsi diagnosed plaintiff with possible left L5/S1 radiculopathy and recommended an EMG.  Plaintiff was also given a prescription for Lodine and advised to continue therapy.[6]  On March 12, 2007, the EMG was performed and revealed mild evidence of left L5 radiculopathy. (T. 192).  On March 16, 2007, plaintiff underwent an MRI which revealed mild degenerative disc space narrowing at L5/S1 with slight right sided disc protrusion but no evidence of nerve root impingement or significant spinal stenosis.  (T. 192).  On March 21, 2007, plaintiff returned to Dr. Kodsi who noted that she was "limping".  Plaintiff displayed a restricted range of motion at her lower back with severe spasm.  Dr. Kodsi noted that plaintiff was "slightly better than the time of initial evaluation secondary to medication". (T. 193).  Plaintiff was advised to continue the prior course of treatment.

On June 18, 2007, plaintiff returned to Dr. Kodsi with continued complaints of back pain and greater left leg pain. (T. 276).  On examination, Dr. Kodsi noted that plaintiff exhibited a "full range of motion of the lower back" and negative straight leg testing bilaterally.  However, plaintiff still had significant tenderness/spasm in the lumbar area.  Dr. Kodsi's diagnosis was unchanged and he suggested a trigger point injection and physical therapy. (T. 277).

On June 27, 2007, plaintiff had the injection and on July 5, 2007, she admitted that she had no lower back pain after the injection. (T. 272).  On July 5, 2007, plaintiff complained of pain

---

[5] Dr. Kodsi specialized in Physical Medicine and Rehabiliation. (T. 198).

[6] Lodine is a nonsteroidal antiinflammatory drug used to treat arthritis.  *Dorland's* at 660, 1088.

in her left leg. (T. 272).  At that time, plaintiff was taking only Tylenol and Aleve.  Dr. Kodsi

prescribed Cymbalta and scheduled a neurosurgical evaluation. (T. 273).

On July 30, 2007, plaintiff was examined by James S. Greenspan, M.D. at North Country

Neurosurgical Associates. (T. 281).  At the time of the consultation, plaintiff was not taking any

medication other than Tylenol.  (T. 282).  Upon examination, Dr. Greenspan found no tenderness

in the back, forward flexion without pain and negative straight leg raising.  Dr. Greenspan opined

that plaintiff had, "intractable low back and left leg pain with a series of MRIs that do not really

show any left sided pathology to account for her symptoms". (T. 283).  Dr. Greenspan did not

recommend surgery and did not feel "comfortable giving her medication at this time, but certainly

would encourage her other treating physicians to prescribe Cymbalta when insurance is

available".  Dr. Greenspan suggested CAT scans and a lumbar myelogram and plaintiff opted to

proceed with those procedures.  In November 2007, CAT scans and lumbar myelograms  were

"normal" with "no evidence of nerve root impingement".  (T. 195, 284-289).

On January 1, 2008, Dr. Dorsey wrote a letter, addressed to "To Whom it May Concern"

and opined that plaintiff was, "completely disabled at this time.  She is unable to go out and apply

for jobs due to her disability and will be referred to VESID for work retraining".  (T. 291).

Plaintiff began treating with Dr. Martin in May 2008.  At that time, plaintiff exhibited

tenderness over her S1 joint without spasms and a normal gait.  Dr. Martin diagnosed plaintiff

with lumbar radiculitis and prescribed Cymbalta. (T. 298).  On May 16, 2008, Dr. Martin noted,

"I cannot state that patient is disabled". (T. 307).   Plaintiff treated with Dr. Martin on June 3,

2008 and January 2, 2009 for unrelated complaints.  During those visits, Dr. Martin did not

discuss or provide a treatment plan for plaintiff's lumbar issues. (T. 302, 304).  On February 3,

2009, plaintiff complained of bilateral hip pain and discomfort in her left leg.  Plaintiff asked for a

note stating that she is disabled. (T. 300).   Regarding her lumbar radiculitis, Dr. Martin noted,

"[t]his is long standing.  As we have discussed previously, I cannot state that she is disabled.  She

needs to have a functional capacity evaluation.  Will arrange." (T. 301).  Dr. Martin referred the

plaintiff to physical therapy for the evaluation, diagnosed plaintiff with bursitis trochanteric[7] and

prescribed Naprosyn.[8] (T. 301).

### 2.     Dr. Susan Dorsey

Here, the ALJ discussed Dr. Dorsey's relevant treatment:

> The last evaluation relating to the claimant's lower back was made in
> December 2006, and Dr. Dorsey diagnosed the claimant with lower
> back strain with sciatica and did not report any limitations as being
> recommended at that time.  There are no further records from that
> treating source to indicate ongoing treatment.

The ALJ addressed Dr. Dorsey's January 2008 opinion and explained:

> Susan Dorsey, M.D., the claimant's primary care physician, detailed
> in her office notes dated January 2008 that the claimant were [sic]
> completely disabled, was unable to go out an [sic] apply for jobs due
> to her disability and were [sic] being referred to VESID for work
> retraining.   The opinion that the claimant is "disabled" is quite
> conclusive and provides very little explanation of the evidence relied
> on in forming this opinion.  Furthermore, in accordance with 20 CFR
> 404.1527 and SSR 96-5p, whether an individual is disabled is an issue
> reserved for the Commissioner. (T. 11).

In this context, the ALJ also discussed other medical evidence in the record including

plaintiff's treatment with Dr. Martin, Dr. Greenspan's report and the results of two independent

medical examinations (Dr. Amelita Balagtas and Dr. Lynne T. Nicolson) and found:

> Therefore, a finding is made that the opinion of Dr. Dorsey is not
> supported or consistent with the totality of the record.  Therefore, it is
> not adopted nor is it provided with more than little weight. (T. 12).

---

[7] Bursitis trochanteric is an inflammation with pain on the lateral part of the hip and thigh.  *Dorland's* at 269.

[8] Naprosyn is an anti-inflammatory used in the treatment of pain and inflammation.  *Dorland's* at 125.

For the following reasons, the Court finds that the ALJ assigned the proper weight to Dr. Dorsey's opinions and adequately explained his reasoning.  Dr. Dorsey expressed two opinions, one in January 2006 and the second in January 2008, regarding plaintiff's ability to perform work related activities.  Dr. Dorsey is not an orthopedic specialist and last examined plaintiff in December 2006, two and a half years prior to the administrative hearing.  Dr. Dorsey's opinions regarding plaintiff's capabilities do not coincide with her office records or course of treatment.  In January 2006, Dr. Dorsey opined that "plaintiff should not lift more than 20 pounds and needed to get up from a seated position every hour.  Plaintiff was also directed to avoid heavy pushing, pulling or overhead lifting".  (T. 231).  Dr. Dorsey rendered that opinion after only one examination and did not comment or express any further opinion regarding plaintiff's functional limitations or restrictions.  *See Overbaugh v. Astrue*, 2010 WL 1171203, at *5 (N.D.N.Y. 2010) (substantial evidence supported the ALJ's refusal to assign controlling weight to the treating physician's opinion because doctor opined, after only nine visits, that plaintiff was disabled and all subsequent records lack reference to the plaintiff's ability to work).  Indeed, while Dr. Dorsey opined, in January 2006, that plaintiff could not lift more than twenty pounds and needed to move from a sitting position every hour, she did not express those limitations or opinions three months later when she completed plaintiff's physical examination form for her employment with the Visiting Nurse Association.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (when a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions).  Dr. Dorsey's own objective testing further belies her conclusions as she consistently found that plaintiff exhibited negative straight leg raising and normal strength testing. *See Wynn v. Astrue*, 617 F.Supp.2d 177, 184 (W.D.N.Y. 2009) (the

significant limitations were not supported by objective assessments such as range of motion and strength tests).

Dr. Dorsey's January 2008 opinion also carries little to no weight. First, as the ALJ correctly noted, the issue of plaintiff's disability is a determination reserved for the Commissioner. *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (a treating physician's belief that a plaintiff is "totally disabled" is irrelevant since that determination is reserved for the Commissioner). Second, and more importantly, the 2008 opinion is stale as it is not based upon a contemporaneous or even recent examination of plaintiff. Based upon the record, the opinion was rendered one year after plaintiff's last examination with Dr. Dorsey. "Although deference should be accorded to [the treating physicians' opinion], the unexplained gap between [the] most recent examination of plaintiff and the preparation of the [ ] report, suggest[s] that such deference would not be appropriate." *Ruggireo v. Astrue*, 2008 WL 4518905, at *13 (N.D.N.Y. 2008) (citation omitted).

The Court also finds that Dr. Dorsey's opinions are not supported by objective medical evidence including x-rays, MRI films, and EMG, CT scans and lumbar myelograms. The ALJ noted the results of these studies in his decision. (T. 11). Further, a review of the medical record also reveals that Dr. Dorsey's conclusions are unsupported by plaintiff's other treating physicians, Drs. Kodsi and Martin, and in conflict with Dr. Greenspan's assessment.

Finally, plaintiff's hearing testimony contradicts Dr. Dorsey's assessment. Plaintiff testified that while she can usually walk fifteen to twenty minutes, she walked for forty minutes to appear at hearing. (T. 30). Plaintiff testified that she could stand for thirty minutes and has no limitations with lifting, carrying, bending and stooping. (T. 31, 32).

Although the Court is aware that deference should be accorded to Dr. Dorsey's opinions pursuant to the treating physician rule, the ALJ articulated "good reasons" for failing to afford the opinions such weight. *See Bennett v. Astrue*, 2010 WL 3909530, at *6 (N.D.N.Y. 2010) (citation omitted).   Accordingly, the matter will not be remanded for further consideration of this issue.

## B.     Credibility

Plaintiff argues that the ALJ improperly discounted plaintiff's subjective complaints and failed to follow the Regulations in assessing plaintiff's credibility.  Plaintiff also claims that the ALJ improperly relied upon his personal observations at the hearing in violation of SSR 88-13.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence.  *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their

consistency, both internally and with other information in the case record.  SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon*, 781 F.Supp.2d at 105 (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)).  The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

In this case, the ALJ cited SSR 96-7p and found plaintiff, "only somewhat credible".  (T. 12).  Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility.  The ALJ discussed plaintiff's daily activities, i.e., her work as a visiting home nurse and found that, "her reported activities are much more demanding than the minimal demands of sedentary work activity". (T. 13).   The ALJ discussed plaintiff's subjective complaints, including the frequency and intensity of her symptoms, including hip pain and stiffness and the lack of support, in the record, for those complaints.  The ALJ noted that plaintiff only takes her prescribed medication "once or twice weekly".  (T. 13).

The Court finds further support in the record for the ALJ's conclusions.  At the time of the hearing, plaintiff was working 10 to 18 hours a week helping clients with showers, dressing and

20

household chores.  (T. 25-26).  Plaintiff also testified that she could drive or ride in a car for an hour and that her medication helped with her pain. (T. 24, 28).  Plaintiff performed household chores including washing dishes, laundry, sweeping, mopping and vacuuming.  Plaintiff crocheted and played video games. (T. 32-33).  Plaintiff also spent time at her sister's house or mother-in-law's house. (T. 33).

"To the extent the ALJ's RFC findings rested on his determination of plaintiff's credibility, it was 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology'".  *Cohen v. Astrue*, 2011 WL 2565659, at *22 (S.D.N.Y. 2011) (citations omitted).   Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible.  The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

## C.      Function by Function

SSR 96-8P provides:

> "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), ©, and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."

1996 WL 374184, at *1 (July 2, 1996).

The Second Circuit has not definitively opined on an ALJ's obligation to quantify RFC on a function-by-function basis, and lower courts have reached different conclusions "as to whether a function-by-function analysis is required or merely desirable." *Robins v. Astrue*, 2011 WL 2446371, at *4 (E.D.N.Y. 2011) (citing *Carway v. Astrue*, 2010 WL 6121686, at *9 (S.D.N.Y.

2010) (citation and internal quotation marks omitted)).  The Southern District has held that a "function-by-function" analysis is "desirable".  *Kelly v. Astrue*, 2011 WL 817507, at *8 (N.D.N.Y. 2011) (citing *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *13 (S.D.N.Y. 2007)).  However, the Eastern, Western and Northern Districts have remanded based upon the ALJ's failure to explicitly discuss a function by function analysis.  *Id*. (citations omitted).  Where the ALJ fails to assess a plaintiff's "exertional and postural abilities on a function-by-function basis, his RFC determination cannot be upheld" .  *Yates v. Comm'r of Soc. Sec*., 2011 WL 705160, at *6 (N.D.N.Y. 2011) (citations omitted).

Here, the ALJ concluded that plaintiff could perform the full range of sedentary work but did not perform a "function-by-function" analysis of plaintiff's abilities. The ALJ did not discuss any of the seven strength demands necessary to discuss in a function-by-function analysis and did not cite to any functional evaluation supporting this determination.  While Dr. Dorsey's January 2006 opinion seemingly provides support for the ALJ's conclusion regarding sedentary work, the ALJ assigned only "little weight" to Dr. Dorsey's January 2006 assessment therefore, this opinion cannot be a basis for the RFC assessment.  Moreover, while the record includes a Physical RFC Assessment dated June 7, 2007 prepared by "L. Donatelli" (T. 260-265), the ALJ's decision did not mention or discuss this assessment in any regard.  The ALJ briefly referred to the independent medical examination performed by Dr. Amelita Balagtas at the request of the agency.[9]  However, the ALJ did not assign weight to this opinion and the opinion is not a proper functional analysis. Therefore, it is unclear what evidence the ALJ relied upon in formulating the RFC.  Thus, the Court is unable to ascertain whether the RFC assessment is supported by substantial evidence.

---

[9] Dr. Balagtas opined that "claimant would have moderate limitations in activities that require bending, lifting , prolonged sitting, and prolonged standing".  (T. 259).

In failing to do a function-by-function assessment, the ALJ may make the mistake warned of in SSR 96-8p. *Mardukhayev v. Comm'r of Soc. Sec.*, 2002 WL 603041, at *5 (E.D.N.Y. 2002) (internal citation omitted) (failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions."). The Social Security Rulings are binding. *See Robins v. Astrue*, 2011 WL 2446371, at *4 (E.D.N.Y. 2011). Thus, the case is remanded for proper evaluation of plaintiff's RFC including a function by function analysis of plaintiff's limitations. *See Bennett*, 2009 WL 1035106, at *13.

**IV.    Vocational Expert and the Medical-Vocational Guidelines**

Plaintiff claims that she suffers from non-exertional limitations including side effects from medication (drowsiness and loss of concentration). Thus, plaintiff claims that the ALJ erroneously relied upon the Grids. (Dkt. No. 10, p. 7). Defendant contends that the ALJ properly found that plaintiff could perform the full range of sedentary work and therefore, it was not necessary to pose hypothetical questions to a vocational expert. (Dkt. No. 13, p. 14).

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[10] *Pratt,* 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d at 79. Ordinarily, the ALJ need not consult a vocational

---

[10] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id.* at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[11] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Id.* at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

---

[11] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez* , 1998 WL 150981, at * 10, n. 12.

As discussed, the ALJ failed to properly assess the RFC, thus the findings made at the fifth step of the sequential analysis are affected. The Court has already determined that remand is necessary for further proceedings with respect to plaintiff's functional limitations. On remand, an analysis may require the testimony of a vocational expert regarding the effect that any nonexertional impairments may have on the plaintiff's ability to perform basic work activities. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 487 (W.D.N.Y.2004).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: December 23, 2011
      Albany, New York

Mae A. D'Agostino
U.S. District Judge